Feliberto **CAPELLAN**, Petitioner,

v.

Dean **RILEY**, Superintendent of Fishkill Correctional Facility, Respondent.

No. 91 Civ. 0977 (CHT).

United States District Court, S.D. New York.

Oct. 30, 1991.

As Amended on Motion to Reargue Jan. 10, 1992.

---

County (James M. McGuire, of counsel), New York City, for respondent.

## OPINION

TENNEY, District Judge.

Feliberto Capellan ("Capellan") petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). Capellan was convicted, upon a plea of guilty, in the New York State Supreme Court, New York County, of criminal possession of a controlled substance in the second degree, N.Y. Penal Law § 220.18(1) (McKinney 1984) ("Penal Law"), and was sentenced to a term of imprisonment of six years to life (Rothwax, J.). The Appellate Division affirmed the conviction, 159 A.D.2d 324, 552 N.Y.S.2d 601 (1st Dep't 1990), *reargument denied,* 1990 N.Y.App.Div. LEXIS 6830, and the New York State Court of Appeals denied Capellan's application for leave to appeal. 76 N.Y.2d 853, 560 N.Y.S.2d 993, 561 N.E.2d 893 (1990).

Capellan argues that his constitutional rights to due process and to be free from unreasonable searches and seizures were violated because he was denied an evidentiary hearing on his pretrial motion to suppress physical evidence. For the reasons set forth below, the petition is granted.

## BACKGROUND

At 8:15 a.m. on June 12, 1986, police officers executed a search warrant for apartment 24B at 531 West 211th Street in New York, New York. A. 16.[1] When the officers arrived, Capellan, who was alone in the apartment and clad only in a towel, answered the door. A. 16. The police searched the apartment and found over six pounds of cocaine, a scale, a strainer, plastic bags, and tin foil. A. 47. Capellan was arrested and indicted with two counts of first-degree criminal possession of a controlled substance, Penal Law § 220.21(1), and one count of second-degree criminal use of drug paraphernalia, Penal Law § 220.50. A. 47–48.

The Legal Aid Soc., New York City (Philip L. Weinstein, Richard Joselson, of counsel), for petitioner.

Robert Abrams, Atty. Gen. of S. of N.Y. (Monica R. Jacobson, of counsel), Robert M. Morgenthau, Dist. Atty. of New York

---

**1.** Citations with the letter "A" refer to the Appendix to Petitioner's Memorandum of Law in Support of his Petition for a Writ of Habeas Corpus ("Pet. Memo in Support").

Thereafter, Capellan moved to suppress the physical evidence which was recovered on the ground that the search was unlawful. The court summarily denied the motion in a memorandum decision issued October 8, 1986, finding that because Capellan had "failed to make any allegation that he had a protected privacy interest in the premises searched for the property seized," he had no standing to assert his Fourth Amendment claims.[2] A. 22 (Goodman, J.). However, the court permitted Capellan to submit additional allegations to establish his Fourth Amendment standing.

In response, Capellan submitted the following statement:

a) I was arrested on June 12, 1986 at 531 West 211th Street, New York [sic] N.Y.

b) Althrough [sic] I was in the apartment at the time of the arrest, I was neither the leaseholder nor a permanent resident of this apartment.

c) I had moved into the apartment with the intent to stay only a couple of days.

d) I had no prior knowledge of any activity taking place within this apartment nor did I have knowledge of any illegal substances contained within the apartment.

A. 24. On October 22, 1986, the court ruled from the bench that: "Its [sic] clear from [Capellan's] affidavit he has no standing to contest [the search warrant]. He has no reasonable expectation of privacy to the premises since he has indicated in his affidavit [that he is] neither [a] leaseholder [nor] a permanent resident of the apartment." A. 26–27.

On December 1, 1986, Capellan pleaded guilty to one count of criminal possession of a controlled substance in the second degree, Penal Law § 220.18(1), in full satisfaction of the indictment (Rothwax, J.). On January 7, 1987, Capellan was sentenced to a term of imprisonment of six years to life. A. 43. Capellan, however, reserved his right to appeal the denial of his suppression motion. A. 33–34, 43.

On direct appeal to the Appellate Division, Capellan argued that in ruling from the bench on October 22, 1986, the court had applied an incorrect standing test in summarily denying his motion to suppress. A. 57. On March 15, 1990, the Appellate Division affirmed the trial court, finding that Capellan did not have Fourth Amendment standing because he had failed to establish the requisite reasonable expectation of privacy under the "totality of the circumstances" test of *People v. Wesley*, 73 N.Y.2d 351, 540 N.Y.S.2d 757, 538 N.E.2d 76 (1989), and *People v. Rodriguez*, 69 N.Y.2d 159, 513 N.Y.S.2d 75, 505 N.E.2d 586 (N.Y.1987). A. 79–80. On March 22, 1990, Capellan sought leave to appeal to the New York State Court of Appeals.

On April 18, 1990—while Capellan's application for leave to appeal was pending—the United States Supreme Court decided in *Minnesota v. Olson* that an overnight guest has a legitimate expectation of privacy in the home of the host, and thus, has Fourth Amendment standing to challenge the state's intrusion into that home. 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Thus, Capellan requested the New York Court of Appeals to defer consideration of his application for leave to appeal and moved before the Appellate Division to reargue his appeal in light of *Olson*. A. 83, 89–92. On May 31, 1990, the Appellate Division denied the motion to reargue. A. 99. Thereafter, the Court of Appeals denied Capellan's application for leave to appeal. A. 108–09.

## DISCUSSION

### A. *Exhaustion*

As a preliminary matter, the court notes that Capellan has exhausted his state court

---

**2.** Sections 710 *et seq.* of N.Y.Crim.Proc. Law (McKinney 1984) ("CPL") provides the procedural means to adjudicate Fourth Amendment claims. Under this procedure, a court is required to "conduct a hearing and make findings of fact essential to the determination" of a defendant's motion to suppress, if the motion papers "allege a ground constituting a legal basis for suppression" and provide "sworn allegations of facts" in support thereof. CPL § 710.60(3)–(4).

remedies with regard to the argument set forth in his petition. *See* 28 U.S.C. § 2254(b), (c) (1988).

### B. *Fourth Amendment Standing under Minnesota v. Olson* [3]

■ In order to establish the requisite standing to receive a hearing for a Fourth Amendment suppression motion, a defendant must show that he had a reasonable expectation of privacy over the area entered and searched. *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *People v. Ponder*, 54 N.Y.2d 160, 445 N.Y.S.2d 57, 429 N.E.2d 735 (N.Y.1981). In *Minnesota v. Olson*, the Supreme Court held that an overnight guest has a reasonable expectation of privacy in the home of his host, and, therefore, has standing to move to suppress physical evidence obtained during an unlawful search of those premises. 110 S.Ct. 1684 (1990). In reaching this conclusion, the Court rejected Minnesota's twelve-factor standing test as "needlessly complex," [4] and asserted that a place need not be one's home "in order for one to have a legitimate expectation of privacy there...." [5] *Id.* at 1688.

Here, Capellan stated that although he was not "the leaseholder [or] a permanent resident" of apartment 24B, he had "moved into the apartment with the intent to stay [ ] a couple of days." [6] A. 24. The court first notes that any common sense reading of this affidavit would lead one to believe

that at the very least, Capellan was an overnight guest in the apartment. Indeed, his assertion that he intended to stay "a couple of days" indicates that his connection to the apartment may have been as more than merely an overnight guest. Apparently, the trial court accepted Capellan's assertions as true, since in denying him standing, it made the specific finding that he was neither a leaseholder nor a permanent resident of the premises. A. 26–27. Furthermore, the facts fully support Capellan's status as an overnight guest: upon his arrest at 8:15 in the morning, he was found inside the apartment—an apartment with no signs of forced entry, he came to the front door clad only in a towel, and his pants were hanging on a closet door inside the apartment. A. 17, 23. Although respondent argues that Capellan failed to establish standing because he did not negate the possibility that he was a trespasser, there is no evidence to support such a theory. Furthermore, the Appellate Division did not cite respondent's trespasser theory as a reason for denying reargument. Bill of Particulars 3–4, A. 16–17; Pretrial Order, October 8, 1986 (Goodman, J.), A. 23.

Given Capellan's representations in his affidavit and the corroborating circumstances surrounding the arrest, the court finds that Capellan established that at the very least, he was an overnight guest in apartment 24B. The court concludes, therefore, that *Olson* applies to Capellan's

---

**3.** Because the *Stone v. Powell* bar on federal habeas review of fourth amendment claims is a threshold issue, it is ordinarily addressed before the merits of a petitioner's habeas claim. 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Here, however, in order to determine whether *Stone* bars Capellan's petition, i.e., whether he had the opportunity for full and fair litigation of his fourth amendment claim, the court must first determine whether *Olson*—the case that would give him standing to assert his fourth amendment claim—applies to Capellan's case.

**4.** Minnesota's twelve-factor test is almost identical to the "totality of the circumstances" test relied upon by the Appellate Division in this case. *See Olson*, 110 S.Ct. at 1687–88 n. 4; *People v. Rodriguez*, 69 N.Y.2d 159, 163, 513

N.Y.S.2d 75, 77–78, 505 N.E.2d 586, 588–87 (N.Y.1987).

**5.** Petitioner and respondent both agree that *Olson*'s holding is not a new rule, and therefore, does not implicate *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (addressing retroactivity of new rules).

**6.** The court notes that Capellan swore to the facts in his affidavit three and one-half years before the Court decided *Olson*. *See* A. 24; *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Thus, Capellan cannot be expected to have anticipated the precise language—i.e., "overnight guest"—that the Supreme Court would later use to explain who has a reasonable expectation of privacy under the Fourth Amendment.

## 732

case, thereby giving him standing under the Fourth Amendment to challenge the search of the apartment in which he was arrested. Thus, in denying his request for reargument in light of *Olson*, the Appellate Division refused to apply the prevailing constitutional standard for Fourth Amendment standing.[7]

### C. *Federal Habeas Review of Fourth Amendment Claims*

■ In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court sharply curtailed federal habeas review of Fourth Amendment claims brought by state prisoners. The Court in *Stone* held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 494, 96 S.Ct. at 3052. The Court's rationale for this new rule was that the costs associated with relitigating a suppression motion far outweighed any possible deterrent effect of excluding the evidence in question.[8]

Although *Stone* announced a new standard governing the scope of federal habeas review, the Court did not clarify what would constitute an "opportunity for full and fair litigation" of a Fourth Amendment claim. The Court of Appeals in this circuit has enumerated two scenarios in which a defendant is precluded from *Stone*'s "opportunity for full and fair litigation": (1) "if the state provides no corrective procedures at all to redress Fourth Amendment

violations," [9] and (2) if the state provides a corrective procedure, "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.1977) (en banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *see also McPhail v. Warden*, 707 F.2d 67, 70 (2d Cir.1983) (no federal habeas review of Fourth Amendment claims "except in the rare case where the state provided no corrective procedures at all, or there had been an 'unconscionable breakdown' in state process which prevented utilization of an existing procedural remedy").

Given the existence of a meaningful corrective procedure as provided by CPL § 710 *et seq.*, the only way a federal court in this circuit can review Fourth Amendment claims on habeas review is if there was an "unconscionable breakdown" in New York's process. The meaning of "unconscionable breakdown," however, is far from clear. The court in *Gates* cited two sources to clarify what it meant by unconscionable breakdown: the first was a case in which the defendant's murder trial was dominated by an angry mob, *see Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915), and the second was a law review article which asserted that an unconscionable breakdown occurs whenever there has been no "meaningful inquiry by the state courts" into the defendant's claim, *see* Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441, 456–57 (1963). *Gates*, 568 F.2d at 840. Subsequent to *Gates*, courts in this circuit have held that an unconscionable breakdown oc-

---

**7.** The court notes that the Appellate Division did *not merely grant reargument and then decide to* adhere to its previous ruling. Rather, the court—in denying the motion to reargue—refused to consider the effect of *Olson* on Capellan's standing to suppress the evidence in question.

**8.** This conclusion is premised on the Court's prior decisions that the exclusionary rule is not *itself a constitutional right, but rather, a prophy-*lactic safeguard designed to protect Fourth Amendment rights generally through its deterrent effect. *See Stone*, 428 U.S. at 486, 96 S.Ct.

at 3048 (citations omitted). Furthermore, the Court emphasized the fact that the exclusionary rule is unrelated to the guilt or innocence of the defendant and often prevents highly probative evidence from being admitted.

**9.** Capellan does not argue that New York lacks a process for the suppression of evidence obtained through an unlawful search and seizure. Indeed, Capellan attempted to use New York's procedure, i.e., CPL § 710 *et seq.*, in order to obtain a hearing on his fourth amendment claim.

curs when a "procedural 'catch-22'" prevents the petitioner's claims from ever being heard by any state court.[10] *Cruz v. Alexander*, 477 F.Supp. 516, 523 (S.D.N.Y. 1979), *appeal dism'd without op.*, 622 F.2d 573 (2d Cir.1980). In *Cruz*, the state trial court had refused to decide Cruz's claim made in both pretrial and post-trial motions, and both the Appellate Division and the New York Court of Appeals had affirmed his conviction. *Cruz*, 477 F.Supp. at 522. Thus, the district court on habeas review concluded that "Cruz's opportunity to litigate his claim cannot have been full or fair when he was deprived in this way of a hearing in any court." *Id.* at 523.

Other circuits—while not explicitly adopting the Second Circuit's "unconscionable breakdown" requirement—have allowed habeas review of Fourth Amendment claims when the state courts' decisions have prevented a petitioner's legitimate efforts to litigate Fourth Amendment claims. In *Gamble v. Oklahoma*, for example, the Tenth Circuit held that the state court's refusal to apply the controlling constitutional standard to the petitioner's Fourth Amendment claim denied him the opportunity for full and fair litigation as required by *Stone*. 583 F.2d 1161, 1165 (10th Cir. 1978). *Gamble* involved identical circumstances to those presented in the instant case: during the pendency of the defendant's appeal, the Supreme Court decided a case which squarely applied to his circumstances, and yet, the state court did not make any reference to this new case or employ any of the case's governing factors in its decision of the defendant's Fourth Amendment claim. *Id.* at 1163. In reaching its conclusion, the Tenth Circuit stated that the "opportunity for full and fair litigation," includes the state courts' "recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Id.* at 1165. Furthermore, the

court went on to assert that "a federal court is not precluded from considering Fourth Amendment claims in habeas corpus proceedings where the state court wilfully refuses to apply the correct and controlling constitutional standards." *Id.* Additionally, the Eleventh Circuit held in *Tukes v. Dugger* that *Stone* did not bar habeas review where the state trial court failed to make explicit findings on matters essential to the Fourth Amendment issue, and the state appellate court issued a summary affirmance. 911 F.2d 508, 514 (11th Cir.1990), *cert. denied sub nom. Singletary v. Tukes*, — U.S. —, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991). The Eleventh Circuit also held in *Agee v. White* that the *Stone* bar did not apply where the state court failed to grant petitioner a hearing on his Fourth Amendment claim, and the state appellate court ignored the claim in its written opinion. 809 F.2d 1487, 1490 (11th Cir.1987).

In this case, the Appellate Division's denial of reargument prevented Capellan from ever having the opportunity for full and fair litigation of his Fourth Amendment claim in light of *Olson*. This is not a case in which the Appellate Division granted petitioner's motion to reargue, and then decided to adhere to its earlier ruling. If that were the case, this court would merely be disagreeing with the merits of the Appellate Division's application of *Olson* to Capellan's circumstances—a position which is clearly barred by *Stone*. *See Shaw v. Scully*, 654 F.Supp. 859, 863 n. 3 (S.D.N.Y. 1987). However, the Appellate Division simply denied the motion to reargue without stating any reasons, thereby refusing to even consider the effect of *Olson* on its earlier holding. Like the state court in *Gamble*, the Appellate Division here did not so much as even mention *Olson* in its denial of the motion to reargue,

---

**10.** Respondent argues that *Cruz* is inapplicable because petitioner in that case was not asserting a Fourth Amendment claim. The court disagrees with respondent's argument, however, because *Cruz* was decided at a time when the reach of *Stone* remained unclear. Thus, the court held in the alternative that even if *Stone*

did apply to the petitioner's claims, "habeas relief would not be precluded, since petitioner did not receive 'an opportunity for full and fair litigation' of his claims in the New York state courts." *Cruz*, 477 F.Supp. at 519 (quoting *Stone*, 428 U.S. at 494, 96 S.Ct. at 3052).

even though *Olson* squarely applied to Capellan's case.[11] *See Gamble*, 583 F.2d at 1163; A. 99. As a result, there was never any meaningful inquiry into the merits of Capellan's Fourth Amendment claim. *See* Bator, *supra*, at 456–57, *cited in Gates*, 568 F.2d at 840.

Although this court recognizes the interests of comity and federalism articulated in *Stone*, nonetheless, "[d]eference to state court consideration of Fourth Amendment claims does not require federal blindness to a state court's willful refusal to apply the appropriate constitutional standard." *Gamble*, 583 F.2d at 1165 (footnote omitted).[12] The court concludes, therefore, that the Appellate Division's refusal to consider *Olson* on Capellan's motion to reargue constituted an unconscionable breakdown in New York's process. Accordingly, Capellan's petition is granted.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is granted. Furthermore, it is ordered that the petitioner be released from custody if the state fails to grant him a suppression hearing within sixty days. The judgment is stayed pending appeal on the condition that within seven days of the date of this order, respondent files a notice of appeal and a motion for an expedited schedule for the prosecution of the appeal.

So ordered.

11. It is worth noting that just a few months after Capellan's motion to reargue was denied by the Appellate Division for the First Department, the Appellate Division for the Second and Fourth Departments applied *Olson*, thereby giving standing to defendants who, like Capellan, had been overnight guests in the premises searched. *See People v. Murray*, 169 A.D.2d 843, 565 N.Y.S.2d 212 (2d Dept.1991); *People v. Rice*, 168 A.D.2d 901, 565 N.Y.S.2d 933 (4th Dept. 1990); *People v. Moss*, 168 A.D.2d 960, 565 N.Y.S.2d 935 (4th Dept.1990).

12. In arguing for denial of Capellan's petition, respondents rely on many cases in which *Stone*'s bar prevented habeas review. However, all of these cases involve petitioners who—unlike Capellan—either forewent the opportunity in state court to litigate their Fourth Amend-

## ON MOTION TO REARGUE

### January 10, 1992

In an Opinion dated October 30, 1991 ("Opinion"), this court granted petitioner Capellan's Petition for a writ of habeas corpus by concluding that the New York State courts had deprived him of the opportunity for full and fair litigation of his Fourth Amendment suppression claim. Both petitioner and respondent now move to amend the Opinion, and respondent moves to reargue.[1] For the reasons set forth below, the motion to reargue is denied, but the motions to amend the Opinion are granted.

## DISCUSSION

### A. *Motion to Reargue*

■ A court will grant a motion to reargue only if the movant presents matters or controlling decisions which the court overlooked that might have materially influenced its earlier decision. *See* Local Rule 3(j); *Morser v. AT & T Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y.1989). The purpose of the rule is 'to dissuade repetitive arguments on issues that have already been considered fully by the court.' *Morser*, 715 F.Supp. at 517 (quoting *Caleb & Co. v. E.I. DuPont De Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y.1985). Thus, the movant should not treat a motion to reargue as a substitute for appealing from a final judgment. *Id.; see also Geshwind v. Garrick*, 738 F.Supp. 792 (S.D.N.Y.1990). Furthermore, a movant may not present

ment claims or who received full evidentiary hearings on those claims. *See Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.1977) (Fourth Amendment claim raised for first time in New York Court of Appeals), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978); *McPhail v. Warden*, 707 F.2d 67, 69 (petitioner did not timely raise Fourth Amendment claim); *Foran v. Metz*, 463 F.Supp. 1088, 1093 (S.D.N.Y.) (petitioner was given suppression hearing), *aff'd*, 603 F.2d 212 (2d Cir.), *cert. denied*, 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 38 (1979); *Shaw v. Scully*, 654 F.Supp. 859, 865 (S.D.N.Y.1987) (same).

1. Although the parties move to amend the judgment, no judgment was ever entered by the Judgment Clerk. Thus, the court will treat the motions as ones to amend the court's Opinion.

new arguments which could have been presented before or at the time the court rendered its decision. *See Milwee v. Peachtree Cypress Inv. Co.,* 510 F.Supp. 284 (D.Tenn.1978) (motions to reargue not intended to allow party to present its case under new theory).

Here, respondent argues that the court improperly relied on corroborating circumstances in reaching the conclusion that petitioner was an overnight guest at the premises searched, thereby giving him standing under *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), to challenge the legality of the search. The court, however, did not rely on the corroborating circumstances in reaching the conclusion that Capellan was an overnight guest. The court's Opinion clearly states that "any common sense reading of [Capellan's] affidavit would lead one to believe that at the very least, Capellan was an overnight guest in the apartment." Opinion at 731. Although the court later notes that the surrounding circumstances support Capellan's allegation, these additional facts are not essential to the court's conclusion.

■ Respondent also argues that the court improperly relied on the conclusion that the Appellate Division refused to consider the effect of *Olson* on petitioner's case. Relying on *Ylst v. Nunnemaker,* — U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), respondent argues for the first time that the court should not have given any weight to the Appellate Division's summary denial, or in other words, the court should have "looked through" the summary denial to the last reasoned opinion in this case. *See* Memorandum of Law in Support of Respondent's Motion to Reargue or to Amend the Judgment at 11–12. This new argument, however, should have been presented to the court in respondent's original memorandum of law, and thus, cannot be used as grounds for granting respondent's motion to reargue. Further-

more, assuming *arguendo* that respondent had a valid excuse for not presenting the argument at the appropriate time,[2] the court concludes that the reasoning of the *Nunnemaker* does not apply to this case.[3] The Court in *Nunnemaker* stated that "a presumption which gives [unexplained orders] *no* effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play." *Nunnemaker,* 111 S.Ct. at 2595 (emphasis in original). This reasoning, however, clearly does not apply to Capellan's circumstances, since the last reasoned decision was one that was decided before *Olson* was decided. While it is true that ordinarily, unexplained orders are given no effect, Capellan's case was not ordinary—i.e., a new case which was directly on point was decided during the pendency of petitioner's case, making it impossible to look through the unexplained order to the reasoning of the last decision.

The court concludes, therefore, that respondent has not presented additional facts or law that might have materially influenced the court's earlier decision. Accordingly, the motion to reargue is denied.

### B.  *Motion to Amend The Opinion*

■ Upon granting Capellan's habeas petition, the court ordered that petitioner's conviction be vacated and that the state grant him a suppression hearing within sixty days. Because both petitioner and respondent request that the conviction not be vacated, the court grants this request. In addition, the court is persuaded by respondent's argument that a federal court does not have the power to directly order a state court to hold a suppression hearing. *See Barry v. Brower,* 864 F.2d 294 (3rd Cir. 1988). Therefore, the first two sentences of the "Conclusion" section of the court's Opinion are amended as follows:

---

**2.** The court recognizes that the District Attorney was only recently made a party to Capellan's habeas petition. *See* Order of November 7, 1991 (substituting the New York County District Attorney for the Attorney General of the State of New York).

**3.** Respondent admits that *Nunnemaker* does not govern here because it addressed an issue which was not implicated in this case. *See* Resp.Mem. in Supp. at 11–12.

Editor's Note: The correction stated has been made to the "Conclusion" section of the original opinion.

## CONCLUSION

For the reasons set forth above, respondent's motion for reargument is denied, but both parties' motions to amend the Opinion are granted.

So Ordered.