**Feliberto CAPELLAN, Petitioner–Appellee,**

v.

**Dean RILEY, Superintendent of the Fishkill Correctional Facility, Respondent–Appellant.**

**No. 1305, Docket 92–2027.**

United States Court of Appeals, Second Circuit.

Argued March 30, 1992.

Decided Sept. 16, 1992.

James M. McGuire, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty. for New York County, Mark Dwyer, Asst. Dist. Atty., of counsel), for respondent-appellant.

Richard A. Joselson, New York City (Philip L. Weinstein, The Legal Aid Soc., of counsel), for petitioner-appellee.

Before: PIERCE, MAHONEY, Circuit Judges, and METZNER, District Judge.[*]

PIERCE, Circuit Judge:

The Superintendent of the Fishkill Correctional Facility appeals from a judgment of the United States District Court for the Southern District of New York, Charles H. Tenney, *Judge*, 779 F.Supp. 728, granting appellee's petition for a writ of habeas corpus on the ground that an unconscionable breakdown occurred in the New York State courts depriving petitioner of an opportunity for full and fair litigation of his fourth amendment claim. The judgment of the district court is vacated and the cause remanded with instructions to dismiss the petition.

## BACKGROUND

On the morning of June 12, 1986, at approximately 8:15 a.m., police officers executed a search warrant for apartment 24B, at 531 West 211th Street, in Manhattan. Upon entering, the officers found Capellan alone in the apartment, wearing only a towel. During their search, the police found and seized over six pounds of cocaine and assorted narcotics paraphernalia. Capellan was arrested and charged in an indictment with two counts of criminal possession of a controlled substance in the first degree, N.Y.Penal Law § 220.21, and one count of criminally using drug paraphernalia in the second degree, N.Y.Penal Law § 220.50.

Thereafter, Capellan moved in the Supreme Court of the State of New York, New York County to suppress "all property and/or contraban [sic] seized from [his] person [or] possession ... obtained in violation of [his] constitutional rights." The People opposed the motion to suppress on the ground that Capellan lacked standing to contest the search of the apartment.

Justice Budd Goodman denied Capellan's motion in a written decision dated October 8, 1986 on the ground that the movant had failed to make "any allegation that he had a protected privacy interest in the premises searched for the property seized." *People v. Capellan,* Indictment No. 4320/86 (Sup. Ct., New York County, Oct. 8, 1986) (order denying motion to suppress).

On October 22, 1986, Capellan, pursuant to a request by Justice Goodman, submitted an affidavit with respect to the standing issue. The affidavit stated

I wish to state and affirm the following facts:

a) I was arrested on June 12, 1986 at 531 West 211th Street, New York N.Y.

b) Althrough [sic] I was in the apartment at the time of arrest, I was neither the leaseholder nor a permanent resident of this apartment.

c) I had moved into the apartment with the intent to stay only a couple of days.

d) I had no prior knowledge of any activity taking place within this apartment nor did I have knowledge of any illegal substance contained within the apartment.

After reviewing the affidavit, Justice Goodman, this time ruling from the bench, determined that Capellan had no standing to contest the search because he had failed, yet again, to allege facts establishing that he had a reasonable expectation of privacy. On December 1, 1986, before Justice Harold Rothwax, Capellan pleaded guilty to one count of criminal possession of a controlled substance in the second degree, N.Y.Penal Law § 220.18, in full satisfaction of the indictment. On January 7, 1987, he was sentenced to an indeterminate term of incarceration of six years to life.

Capellan appealed to the Appellate Division, First Department, arguing that his pre-trial suppression motion papers had alleged sufficient facts "that the authorities had violated his reasonable expectation of

---

[*] The Honorable Charles M. Metzner, United States District Judge for the Southern District of New York, sitting by designation.

privacy." He maintained that because the court applied an erroneous standing test, he had been denied the opportunity for fair litigation of his suppression claim, and he asked that the matter be remanded for an evidentiary hearing on his motion to suppress.

In a brief written decision issued on March 15, 1990, the Appellate Division unanimously affirmed the lower court's judgment, reiterating that Capellan's "unelaborated statement that he temporarily 'moved into' the apartment where the search warrant was executed was insufficient to entitle [him] to a hearing on his motion to suppress the physical evidence...." *People v. Capellan,* 159 A.D.2d 324, 324, 552 N.Y.S.2d 601, 602 (1st Dep't 1990). On March 22, 1990, Capellan sought leave to appeal to the New York Court of Appeals.

However, while this application was pending, the United States Supreme Court ruled in *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (April 18, 1990). In *Olson,* the Supreme Court held that the defendant, an overnight guest, had a reasonable expectation of privacy in the home in which he was staying and thus had fourth amendment standing to challenge a police intrusion into that home. 495 U.S. at 96–100. In light of this decision, on April 24, 1990, Capellan sought reargument in the Appellate Division, arguing in his motion papers that *Olson* raised a triable issue on the question of standing. He requested that the Appellate Division grant his motion to reargue and reconsider its determination that the denial of his suppression motion was proper. Several weeks later, on May 31, 1990, the Appellate Division unanimously denied the motion to reargue, stating that:

Defendant-appellant having moved for reargument of an order of this Court entered on March 15, 1990.

Now, upon reading and filing the papers with respect to the motion and due deliberation having been had thereon,

It is ordered that the motion be and the same hereby is denied.

Capellan renewed his application for permission to appeal to the New York Court of Appeals. On August 10, 1990, his application was denied. *People v. Capellan,* 76 N.Y.2d 853, 561 N.E.2d 893, 560 N.Y.S.2d 993 (1990) (Alexander, J.).

On February 8, 1991, pursuant to 28 U.S.C. § 2254, Capellan filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of New York. In his memorandum of law in support of his petition, Capellan contended that the allegations in his pre-trial suppression motion papers filed in the state court were sufficient under the standard set forth in *Olson* to mandate a hearing in that court on his motion to suppress. Capellan also argued that *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), did not bar federal habeas corpus review of the state court decision because he had not had an opportunity for full and fair litigation of his claims due to an unconscionable breakdown in New York's corrective procedure for fourth amendment claims. Capellan hinged his "breakdown" argument on the Appellate Division's summary, post-*Olson* denial of reargument, which he contended did not take into account the *Olson* decision.

The district court agreed that an unconscionable breakdown had occurred. *Capellan v. Riley,* 779 F.Supp. 728, 733–34 (S.D.N.Y.1991). The court first determined that "any common sense reading" of Capellan's pre-trial affidavit established that he was an overnight guest and, thus, had standing, under *Olson,* to challenge the search of the apartment. *Id.* at 731–32. The court then determined that the Appellate Division's denial of the motion to reargue without setting forth any reasoning and its failure to mention *Olson* supported the conclusion that no "meaningful inquiry into the merits of Capellan's Fourth Amendment claim" had occurred. *Id.* at 733–34. Accordingly, Capellan's petition was granted. This appeal followed.

## DISCUSSION

■ The threshold question presented herein is whether, in light of *Stone v. Pow-*

*ell*, we have the authority to review Capellan's fourth amendment claim.

In *Powell*, the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481–82, 96 S.Ct. at 3046 (emphasis added).

In the wake of *Powell*, this Circuit has developed a litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims. *See Gates v. Henderson*, 568 F.2d 830 (2d Cir.1977) (en banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). *Gates* noted that "all that the [Supreme] Court required was that the state [ ] provide[ ] the *opportunity* to the state prisoner for a full and fair litigation of the Fourth Amendment claim...." *Id.* at 839 (emphasis in original). We concluded that review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *Id.* at 840; *see McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir.1983).

Capellan does not contend that New York failed to provide a corrective procedure to redress his alleged fourth amendment claim.[1] Instead, he asserts that an unconscionable breakdown occurred in the existing process in violation of his constitutional rights. Although our decision in *Gates* did not fully expand on precisely when an unconscionable breakdown has occurred, citations within *Gates* to *Frank v. Mangum*, 237 U.S. 309, 35 S.Ct. 582, 59

L.Ed. 969 (1915), and to Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv.L.Rev. 441 (1963) [hereinafter "Bator"], illustrate the sort of "disruption or obstruction of a state proceeding" typifying an unconscionable breakdown. *Shaw v. Scully*, 654 F.Supp. 859, 864 (S.D.N.Y. 1987); *see Cappiello v. Hoke*, 698 F.Supp. 1042, 1050 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir.1988) (per curiam).

In *Frank*, the Supreme Court, decades ago, affirmed the denial of a petition for a writ of habeas corpus despite the petitioner's contention that his murder trial was dominated by an angry mob. *See* 237 U.S. at 324, 345, 35 S.Ct. at 586, 594. The Court stated that if the trial judge yielded to mob intimidation of the jury, due process would have been violated. *Id.* at 335, 35 S.Ct. at 590. However, it stated that since Georgia, the forum state, had provided adequate procedures to remedy alleged due process violations, due process had not been denied, and collateral review was unwarranted. *Id.* at 335–36, 35 S.Ct. at 590.

Similarly, in his habeas article written years later, Professor Bator discussed, *inter alia*, when federal habeas corpus review of state court decisions was justifiable. He observed that if the state had furnished no process, or if the process furnished was "claimed to be meaningless [because] the totality of state procedures allegedly did not provide rational conditions for inquiry into federal-law ... questions," collateral review by a federal court would be appropriate. Bator, *supra*, at 456–57. However, he noted that, even under these circumstances, if the state courts had a corrective appellate or collateral procedure that fairly determined that constitutional violations did not occur, federal collateral review was unnecessary. *See id.* at 457–58 n. 28.

The district court herein placed great reliance upon *Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir.1978), a case described

---

1. Indeed, the "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc.Law § 710.10 *et seq.* (McKinney 1984 &

Supp.1988), as being facially adequate." *Holmes v. Scully*, 706 F.Supp. 195, 201 (E.D.N.Y. 1989); *see Gates*, 568 F.2d at 837 & n. 4; *Shaw v. Scully*, 654 F.Supp. 859, 864 (S.D.N.Y.1987).

by the court as involving circumstances identical to those in the case at hand—namely, that during the pendency of Gamble's appeal, the Supreme Court had handed down a decision that directly applied to his circumstances. *See Capellan,* 779 F.Supp. at 733. In *Gamble,* when *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)—a newly-decided relevant decision—was brought to the attention of the state court, the court not only ignored it, but actually rested its decision on the reasoning "flatly condemned by the United States Supreme Court['s]" ruling. *Gamble,* 583 F.2d at 1163.

The Tenth Circuit determined, therefore, that *Powell* did not bar federal review of Gamble's fourth amendment claim because "the state court wilfully refus[ed] to apply the correct and controlling constitutional standards." *Gamble,* 583 F.2d at 1165. The *Gamble* court stated that the " '[o]pportunity for full and fair consideration' ... [was] not limited to[ ] the procedural opportunity to raise or otherwise present a Fourth Amendment claim.... [I]t contemplate[d] recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Id.*

■ The district court herein understood the *Gamble* court's interpretation of *Powell* as permitting "habeas review of Fourth Amendment claims when the state courts' *decisions* have prevented a petitioner's legitimate efforts to litigate Fourth Amendment claims." *Capellan,* 779 F.Supp. at 733 (emphasis added). As we have stated previously, however, this Court has interpreted *Powell* as requiring only that the state courts provide an *opportunity* for full and fair litigation of a fourth amendment claim, *see Gates,* 568 F.2d at 839, unless, of course, the petitioner can demonstrate that the state failed to provide a corrective process, or can point to an "unconscionable breakdown" in that corrective process. *Id.* at 840.

■ Even if Capellan were correct in his allegation that the Appellate Division erroneously decided this issue, a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result. *See id.* Indeed, if we were to read *Powell* as requiring us to focus on the correctness of the *outcome* resulting from the application of adequate state court corrective procedures, rather than on the existence and application of the *corrective procedures* themselves, we would be assuming, implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein. Yet, *Powell* expressly discourages us from making any such assumption. *See* 428 U.S. at 493–94 n. 35, 96 S.Ct. at 3052 n. 35 ("we are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States").

■ Moreover, the mere fact that the Appellate Division adhered to its original outcome without comment concerning *Olson* does not mean that the Appellate Division failed to conduct " 'a reasoned method of inquiry into relevant questions of fact and law.' " *Shaw,* 654 F.Supp. at 864 (citation omitted); *see* Bator, *supra,* at 455–57. Yet, the district court reaches this very conclusion and points to *Tukes v. Dugger,* 911 F.2d 508 (11th Cir.1990), *cert. denied,* — U.S. ——, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991) and *Agee v. White,* 809 F.2d 1487 (11th Cir.1987)—two cases in which federal habeas corpus review was granted, in part, because the state appellate courts did not state the rationales employed in denying fourth amendment claims—as further support that Capellan was denied the opportunity for full and fair litigation of his fourth amendment claim in light of *Olson. See Capellan,* 779 F.Supp. at 733–34; *see also Tukes,* 911 F.2d at 514 (federal collateral review was not barred by *Powell* because the state appellate court issued a summary affirmance of trial court's denial of fourth amendment claim and trial court failed to make explicit findings on the matters essential to the claim); *Agee,* 809 F.2d at 1490 (federal collateral review was not barred by *Powell* because the state appellate court ignored fourth amendment claim in its written opinion).

72

If we were to follow the rationales of these Eleventh Circuit cases and infer that an unconscionable breakdown occurred herein because the Appellate Division issued a summary affirmance rather than a written opinion, not only would this reflect doubt regarding the capabilities of the New York courts as "fair and competent forums for the adjudication of federal constitutional rights," *Powell*, 428 U.S. at 493 n. 35, 96 S.Ct. at 3052 n. 35, but this would also place us in the position of dictating to state courts that they must issue opinions explicitly addressing the issues presented or else face "second guessing" by the federal courts. The Supreme Court has pointedly instructed us that "we have no power to tell state courts how they must write their opinions. We ... will not impose on state courts the responsibility for using particular language in every case in which a state prisoner presents a federal claim." *Coleman v. Thompson*, — U.S. —, 111 S.Ct. 2546, 2559, 115 L.Ed.2d 640 (1991).

To reiterate, to the extent that Capellan claims that the Appellate Division erred in its ruling in light of *Olson*, this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.

## CONCLUSION

Clearly there was a corrective procedure herein by which Capellan could seek to redress his fourth amendment claim. And, just as clearly, there was no unconscionable breakdown in that procedure.

We vacate the district court's judgment and remand the cause to the district court with instructions to dismiss the petition.