104 F.3d 350
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Santos BLAGROVE, Petitioner-Appellant,
v.
Dominic MANTELLO, Superintendent, Coxsackie Correctional
Facility, Respondent-Appellee.
 No. 95-2821.
 United States Court of Appeals, Second Circuit.
 Sept. 24, 1996.
 
 APPEARING FOR APPELLANT: Susan B. Marhoffer, White Plains, NY.
 APPEARING FOR APPELLEE: Lisa Cohen, District Attorney's Office Rockland County, New City, NY.
 Before MINER, ALTIMARI, and PARKER, Circuit Judges.
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Southern District of New York, it is hereby
 ORDERED, ADJUDGED, AND DECREED that the judgement be and hereby is AFFIRMED.
 This cause came on to be heard on the transcript of record and was argued by counsel.
 Petitioner-appellant Santos Blagrove appeals from a judgment entered in the United States District Court for the Southern District of New York (Duffy, J.) dismissing his petition for a writ a habeas corpus, pursuant to 28 U.S.C. § 2254.
 
 
 1
 On April 22, 1988, Detective Steven Levy of the Spring Valley Police Department received information that a "walk-in" informant had witnessed Richard Burey being assaulted and stuffed into a 1985 two-tone Chevrolet. The informant also identified the license plate number of that vehicle. Levy previously had seen this car operated by Blagrove, and he knew that Blagrove and Burey were acquaintances. Later that evening, Burey's body was found in a burned-out building.
 
 
 2
 Based on this information, Levy was sent to Blagrove's residence to watch the car alleged to be involved in Burey's death. Almost immediately, Levy saw two people attempting to drive the car away. At this time, the car was stopped. The police informed the occupants, Blagrove's sister and her boy-friend, that the car was believed to have been used in the commission of a felony. The police then took the keys to the car and locked it, but did not search the car.
 
 
 3
 Blagrove's mother ("Mrs.Blagrove") was informed at her residence that the car had been seized. Mrs. Blagrove was the registered owner of the car and paid the automobile insurance, car payments, registration fees, and any maintenance costs for the car. She indicated that Blagrove had keys to the car so that he could drive her to work. However, Mrs. Blagrove had priority in the use of the car.
 
 
 4
 Approximately 30 minutes after being notified that the car was seized, Mrs. Blagrove arrived at the police station. She was told that the car was suspected of being involved in an assault and kidnapping, that her son and Burey were involved, and that the car was involved in the incident. Mrs. Blagrove was given a consent-to-search form, which she read and signed.
 
 
 5
 Around 11:00 a.m. the next morning, Blagrove voluntarily arrived at the police station and asked to speak with the police. Blagrove was led to an office for an interview. The door to the office was closed, but not locked. Blagrove was read his Miranda warnings at this time, and he acknowledged that he understood each of the rights. Blagrove was not physically or verbally threatened, and was free to leave. The questioning lasted for approximately two hours.
 
 
 6
 During the questioning, Levy was unaware that Blagrove had two pending criminal charges for assault and narcotics. Police Chief Clifford Tallman, who was present during some of the questioning, was aware of the pending charges but said nothing to Levy and did not inquire of Blagrove whether he was represented by counsel. Testimony by a clerk of court, two assistant district attorneys, and part-time Public Defender James Filenbaum established that, despite several adjournments to allow Blagrove to obtain counsel, no appearance had been made by counsel for Blagrove on the pending charges. Blagrove did talk with Filenbaum, but Public Defender records indicate that no representation file existed for Blagrove prior to the questioning.
 
 
 7
 Blagrove subsequently was arrested, and he moved in the state court to suppress the evidence obtained from the seizure of the car and to suppress the statements given to Levy. Following a joint Mapp-Huntley hearing, the court denied the motion. After a jury trial, Blagrove was found guilty of two counts of murder in the second degree and one count of kidnapping in the first degree. Blagrove was sentenced to three concurrent indeterminate terms of 18-years to life imprisonment.
 
 
 8
 Blagrove appealed his judgment of conviction to the Appellate Division, Second Department, where he filed a supplemental pro se brief arguing that the trial court erred in denying his motion to suppress his statements and the evidence seized from the car. All of Blagrove's contentions were rejected by the Appellate Division, and leave to appeal to the New York Court of Appeals was denied.
 
 
 9
 Blagrove then filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the district court. In his petition, Blagrove argued that the admission of the evidence obtained from the seizure of his mother's car violated his constitutional rights. In a Memorandum and Order dated October 4, 1995, the district court dismissed Blagrove's petition. This appeal followed.
 
 
 10
 On appeal, Blagrove argues that the district court erred in denying his petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, because his Fourth Amendment Rights were violated. Blagrove's Fourth Amendment argument is barred, however, because the issue was fully and fairly litigated in the state courts. Stone v. Powell, 428 U.S. 465, 494 (1976); Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.1992). The Fourth Amendment issues were raised before the trial court in the suppression hearing and before the Appellate Division in Blagrove's pro se brief, and the Appellate Division rejected his arguments. Therefore, Blagrove may not raise his Fourth Amendment challenges on federal habeas review.
 
 
 11
 Blagrove also contends that he was denied his right to counsel under the Sixth Amendment, because police failed to inquire whether he was represented by counsel on two pending unrelated charges. This claim is meritless. The suppression hearing testimony clearly establishes that counsel never made an appearance on either of Blagrove's pending charges. Even if Blagrove were represented by counsel on either of the pending charges, the Sixth Amendment would not entitle him to counsel during interrogation in this case. See McNeil v. Wisconsin, 501 U.S. 171 (1991). Further, the police were not required to inquire whether Blagrove was represented by counsel, contrary to his assertion. People v. Bing, 76 N.Y.2d 331 (1990). Therefore, Blagrove's right to counsel was not violated.