**Rayfield LARKIN, Petitioner,**

v.

**George DUNCAN, Superintendent, Respondent.**

**No. 02–CV–6455.**

United States District Court, W.D. New York.

Feb. 17, 2005.

Rayfield Larkin, Moravia, NY, pro se.

Loretta S. Courtney, Monroe County District Attorney's Office, Rochester, NY, for Respondent.

## DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

## INTRODUCTION

Petitioner, Rayfield Larkin ("Larkin"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in New York State Supreme Court (Monroe County) on one count of second degree criminal possession of a controlled substance. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

## FACTUAL BACKGROUND

On February 4, 1997, several officers from the Rochester Police Department were performing surveillance at 154 Lyndhurst Street after having received a tip that the upper apartment at that address was being used in a drug distribution ring. Officers Salway and Adami were watching the front of the building when they observed a blue Dodge Neon pull up to the address. An individual exited the car, went up the back stairs, and entered the apartment. Within a few minutes, a white Cadillac arrived. A person later identified as Larkin exited the Cadillac and went inside the apartment at 154 Lyndhurst Street.

Officer Salway recognized Larkin from a stop that he had conducted approximately five and half months earlier; Larkin had not been charged with anything at that time. Before the officers could approach him, Larkin jumped into his Cadillac and sped away. Although the police suspected that Larkin had just been involved in a narcotics transaction, they followed him because they knew that he did not possess a valid driver's license. According to the officers, Larkin drove at a high rate of speed and committed a number of traffic infractions while they were pursuing him.

Eventually, Larkin pulled into the parking lot of a mini-mart and ran inside the store. As Officers Salway and Adami rushed in after Larkin they saw him reach into his right-hand coat pocket and remove a clear glassine bag. According to the officers, they could see that the bag contained a white, rock-like substance. Larkin then secreted the bag under a jacket which was lying on the counter. At that point, Larkin was placed under arrest for aggravated unlicensed operation of a motor vehicle. The police confiscated the glassine bag which later was found to contain 2.12 ounces of cocaine. Upon questioning by the police, Larkin gave an unsigned written statement confessing to purchasing the cocaine for $1,500 at the house on Lyndhurst Street under surveillance.

Larkin was charged with two traffic violations relating to his operation of a motor vehicle without a valid driver's license and with second and third degree criminal possession of a controlled substance. The trial court granted Larkin's motion to dismiss the count of the indictment charging third degree criminal possession of a controlled substance on the basis that there

had been insufficient proof before the grand jury on the element of intent to sell.

Despite being notified by the court of his trial date and the consequences of his failure to appear, Larkin did not attend any of his trial. The proceedings were conducted *in absentia* and lasted for three days. The jury returned a verdict convicting Larkin of all counts of the indictment, which included the traffic violations, the second degree criminal possession of a controlled substance and the third count of the indictment which had been dismissed prior to trial due to an insufficiency of grand jury proof.

The Appellate Division, Fourth Department, of New York State Supreme Court reversed his conviction on the dismissed count and unanimously affirmed his conviction on the remaining counts of the indictment. *People v. Larkin,* 281 A.D.2d 915, 723 N.Y.S.2d 293 (4th Dept.2001). The New York Court of Appeals denied leave to appeal. *People v. Larkin,* 96 N.Y.2d 864, 730 N.Y.S.2d 38, 754 N.E.2d 1121 (2001).

This federal habeas petition followed. All of the grounds for relief raised herein have been exhausted, *see* 28 U.S.C. § 2254(b)(2), and are properly before the Court. For the reasons set forth below, the petition is denied.

## DISCUSSION

### *Standard of Review*

To prevail under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a

decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### *Merits of the Petition*

### Claim I. Petitioner was denied due process of law as a result of being tried and convicted on a charge that was dismissed prior to trial

Prior to trial, the charge of criminal possession of a controlled substance in the third degree was dismissed based on the insufficiency of the evidence before the grand jury on the issue of intent to sell. For some reason, however, the court included that charge when it listed the counts of the indictment at trial, and the prosecution presented expert testimony by a police officer on the element of intent to sell. According to Larkin, this testimony, unrelated as it was to any count of the indictment properly before the jury, amounted to evidence of an uncharged crime and was highly prejudicial to him.

Inexplicably, defense counsel did not object to the prosecutor's presentation of proof on the issue of intent to sell or to the court's inclusion of the dismissed count in its charge to the jury. On direct appeal, the Appellate Division held that the conviction of that count must be reversed, but that any error in the introduction of evidence concerning the dismissed charge was harmless in light of the overwhelming proof of Larkin's guilt.

 Federal habeas corpus relief will not issue to rectify errors of state constitutional, statutory, or procedural law unless a federal constitutional issue is also presented. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (A federal habeas court "is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States;" it is not the province of a federal habeas court to re-examine state court determinations of state law.). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998), *cert. denied,* 525 U.S. 840, 119 S.Ct. 101, 142 L.Ed.2d 81 (1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). Thus, the habeas court must ask "whether the erroneously admitted evidence, viewed objectively in light of the entire record ... was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985); *accord, e.g., Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir.1992).

■ I agree with Larkin that trial court erred in allowing the introduction of evidence concerning the dismissed count of the indictment charging criminal possession with intent to sell. Proof as to Larkin's intent to sell was not relevant to any element of the other crimes with which he was charged, and therefore the evidence did not have any probative value. However, even without considering the challenged evidence, I find that the record contained very compelling evidence of Larkin's guilt with respect to the charge of second degree criminal possession of a controlled substance. For instance, two eyewitnesses observed Larkin place a glassine bag containing 2.12 ounces of cocaine on the counter of the mini-mart. In addition, Larkin confessed to purchasing the cocaine at the house under surveillance. Such strong evidence of Larkin's guilt makes it highly unlikely that the additional

evidence which he disputes deprived him of a fundamentally fair trial. *See, e.g., Oakley v. Artuz*, 1999 WL 325362, at *2 (E.D.N.Y. May 18, 1999) (Prior crime evidence did not warrant reversal where the "record contained overwhelming evidence of Petitioner's guilt."); *Ayala v. Portuondo*, 75 F.Supp.2d 194, 196 (S.D.N.Y.1999) ("In view of the overwhelming evidence of [petitioner]'s guilt, this [uncharged crimes] evidence cannot[,] even if it had been erroneously admitted, be said to have denied [petitioner] a fair trial."). Because the Appellate Division's rejection of this evidentiary claim was neither "contrary to," nor an "unreasonable application of," governing Supreme Court precedent, habeas corpus relief is not warranted.

### Claim II. Trial conducted *in absentia* violated petitioner's Sixth Amendment rights

Larkin claims that he was denied his Sixth Amendment right to confront his accusers as a result of his trial being held without him present. On direct appeal, the court held that Larkin properly was advised of the trial date the consequences of his failure to appear. Furthermore, the court found, Larkin's arrest on a bench warrant for unrelated charges while the jury was deliberating did not restore his right to be present.

■ "No constitutional error results if a defendant knowingly and voluntarily waives his right to be present at trial." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir.2000) (citing *Smith v. Mann*, 173 F.3d 73, 76–77 (2d Cir.), *cert. denied*, 528 U.S. 884, 120 S.Ct. 200, 145 L.Ed.2d 168 (1999)); *see also Taylor v. United States*, 414 U.S. 17, 19–20, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (holding that petitioner's mere voluntary absence from his trial was an effective waiver, that is, "an intentional relinquishment or abandonment of a known

right or privilege," even without demonstration that petitioner knew or had been expressly warned by trial court that he had right to be present and that trial would continue in his absence and effectively foreclose his right to testify and to confront personally witnesses against him). When a defendant knows the precise time and place he is to appear for trial, and that the consequence of his failure to appear will be a trial *in absentia,* and he nevertheless fails to appear on the scheduled date, he waives his Sixth Amendment right to attend the trial. *Id.* (citing *Smith v. Mann,* 173 F.3d at 77); *see also Taylor,* 414 U.S. at 20, 94 S.Ct. 194 (" '[T]here can be no doubt whatever that the governmental prerogative to proceed with a trial may not be defeated by conduct of the accused that prevents the trial from going forward.' ") (quoting *Illinois v. Allen,* 397 U.S. 337, 349, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)).

■ Because all that the Constitution requires is a knowing and voluntary waiver of the right to be present at trial, and because only deprivations of federal rights are properly raised in habeas corpus petitions, the sole question is whether the state courts correctly found a knowing and voluntary waiver by Larkin of his right to be present at his trial. *See Smith v. Mann,* 173 F.3d at 76–77 (citing *Headley v. Tilghman,* 53 F.3d 472, 474 (2d Cir. 1995) (only deprivations of federal rights are properly raised in a habeas corpus petition)). Under the facts of this case, there can be no question that Larkin voluntarily and knowingly waived this right.

Here, some four months prior to the scheduled start-date of his trial, Larkin was informed that the trial was to start on April 20, 1998, at 10:30 a.m. and that it would proceed in his absence if necessary. When he failed to appear in court on the first day of trial, the judge adjourned the

proceedings at 11:50 a.m. The prosecutor indicated that he had placed calls to all local hospitals and emergency rooms, to the county jail, and to the psychiatric center. The prosecutor also sent an investigator to Larkin's home that morning; the investigator spoke with Larkin's girlfriend who stated that Larkin had gone to the public defender's office and spoken with his attorney at 11:35 a.m. or 11:40 a.m. that same morning. Defense counsel denied the truth of this statement and indicated that she had not spoken to Larkin in the past two weeks.

At that point, the trial judge commenced jury selection but directed the prosecutor to continue to make efforts to locate Larkin. Over the mid-day recess, an investigator again went looking for Larkin, eventually finding him at 76 Saranac Street. The investigator informed Larkin that his trial was starting and that he should contact his attorney immediately and go straight to the courthouse. Larkin replied that he had spoken to his lawyer who told him that trial was starting the following day. The investigator insisted that the trial was commencing that day; Larkin then drove away in his car. He did not appear in court. Defense counsel denied having had any contact with him that day.

Finally, on the third and last day of trial, Larkin was picked up on an outstanding town court bench warrant at about noon. The arresting officers did not know that Larkin also had a pending Monroe County Supreme Court bench warrant stemming from his failure to appear for trial. Larkin alleges that although he informed the officers that his trial was proceeding, they failed to bring him to court and instead booked him at the county jail. The transcripts indicate that the jury began deliberating at 12:28 p.m. and returned a verdict at 2:29 p.m. that same

day, convicting Larkin of all counts of the indictment.

Although Larkin admits that he was mistaken about the trial date, he contends that he had no reason to believe that the investigator's information was more reliable or accurate than his own. Larkin concludes, therefore, that the prosecution failed to prove that he voluntarily absented himself from trial. The fact remains, however, that Larkin voluntarily continued his absence from the courtroom on the second day of trial-the date that he purportedly believed trial was to start. Larkin also complains that when he was taken into custody on the last day of trial, he told the officers that he needed to go to his trial, but he was never brought into court. Thus, he contends, it was "the People's fault that he never made it to the remainder of his trial." This argument, although somewhat creative, is disingenuous and warrants no further discussion.

Based on the record in this case, it is plain that Larkin was informed of the time and the place he was to appear for trial and was duly warned of the consequences of his failure to do so. However, he knowingly and voluntarily waived his Sixth Amendment right to attend his trial by deliberately absenting himself from the proceedings. Thus, there has been no constitutional violation so as to warrant habeas relief.

### III. Fourth Amendment claim

Larkin claims that the trial court erroneously failed to suppress evidence seized following his arrest because the police did not have reasonable suspicion to justify their pursuit of him.

■ In general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (footnotes omitted). The Second Circuit has noted that *Stone* requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." *Gates v. Henderson,* 568 F.2d 830, 839 (2d Cir.1977) (*en banc*), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978) (emphasis added). A federal court may undertake habeas review only in one of two instances: (1) "[i]f the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process...." *Id.* at 840; *accord Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

■ A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." *McPhail v. Warden, Attica Corr. Facility,* 707 F.2d 67, 69 (2d Cir.1983). Here, New York clearly affords defendants the requisite corrective procedures. *See* N.Y.Crim. Proc. Law § 710.10 *et seq.; see also Capellan,* 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988) as being facially adequate").

Larkin may not raise his Fourth Amendment claim on habeas review because he was provided with, and indeed

took full advantage of, the opportunity to fully adjudicate this matter in state court. Defense counsel filed a thorough motion in the trial court in which he contested the validity of the police officers' pursuit and arrest of Larkin and seizure of the bag of cocaine. Following a hearing, the court denied the motion to suppress in a written opinion setting forth its findings of fact and conclusions of law. Larkin then had an opportunity to appeal to the Appellate Division, which likewise considered and rejected his Fourth Amendment claim on the merits. Finally, the Court of Appeals denied leave to appeal, concluding that there was no question of law meriting review.

Larkin's various applications at the trial court and appellate levels challenging the officers' pursuit of him and their seizure of the drugs clearly show that he was given an opportunity for a "full and fair" litigation of his Fourth Amendment claim. In order for Larkin's Fourth Amendment claim to be cognizable on habeas review, therefore, it must be based on a contention that there was an "unconscionable breakdown" in the underlying state court procedural mechanism. *See Capellan,* 975 F.2d at 70.

 Larkin cannot demonstrate that an "unconscionable breakdown" occurred in the courts below. His assertion that the state courts were incorrect does not constitute the sort of "breakdown" referred to in *Gates v. Henderson.* Nor is Larkin's dissatisfaction with the outcome of the suppression hearing evidence of a "breakdown" in the state's procedures for litigating Fourth Amendment claims. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke,* 698 F.Supp. 1042, 1050 (E.D.N.Y.

1988), *aff'd,* 852 F.2d 59 (2d Cir.1988) (*per curiam* ); *accord, Capellan,* 975 F.2d at 70 (observing that some sort of "disruption or obstruction of a state proceeding" of an egregious nature, *e.g.,* the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record before me. Therefore, Larkin's Fourth Amendment claim is not cognizable on habeas review.

### CONCLUSION

For the reasons stated above, Rayfield Larkin's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Larkin has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**