John GRACE Petitioner,

v.

Christopher ARTUZ, Superintendent,
Green Haven Correctional
Facility, Respondent.

No. 00 CV 1441(NG).

United States District Court,
E.D. New York.

April 22, 2003.

John Grace, Stormville, NY, Pro se.

Amy M. Appelbaum, The Office of the District Attorney, Kings County, Brooklyn, NY, for Respondent.

## ORDER

GERSHON, District Judge.

In this *pro se* petition for a writ of habeas corpus brought under 28 U.S.C. § 2254, petitioner, John Grace, challenges his April 1995 conviction, after a jury trial, in the New York State Supreme Court, Kings County (Harkavay, J.), of Criminal Possession of a Controlled Substance in the First Degree in violation of N.Y. Penal Law § 220.21[1], Criminal Possession of a Weapon in the Second Degree in violation of N.Y. Penal Law (former) § 265.03, Criminally Using Drug Paraphernalia in the Second Degree (two counts) in violation of N.Y. Penal Law § 220.50[2], [3], and Criminal Possession of Marihuana in the Fifth Degree in violation of N.Y. Penal Law § 221.10[2]. Petitioner was sentenced to concurrent terms of imprisonment of twenty years to life on the Criminal Possession of a Controlled Substance in the First Degree count, five to fifteen years for the Criminal Possession of a Weapon in the Second Degree count, one year for each count of Criminally Using Drug Paraphernalia in the Second Degree and one year for the Criminal Possession of Marihuana in the Fifth Degree count.

Petitioner appealed from the judgment of conviction to the Appellate Division, Second Department, raising the following seven claims: (1) petitioner's statement to the police that he had a key to a safe and also the key itself, should have been suppressed, because they were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because, after reading petitioner his *Miranda* warnings, the police detective did not specifically ask petitioner if he wished to waive those rights before he asked petitioner to open the safe; (2) the court im-

properly denied suppression of various items seized by the police based on the plain view exception to the warrant requirement; (3) the court's pretrial ruling, under *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), deprived petitioner of a fair trial; (4) the court erred in permitting various items into evidence because the prejudicial effect of their admission outweighed their probative value; (5) the court improperly prohibited defense counsel from calling a defense investigator, Jerry Crippen, as a witness; (6) the court erred by refusing to suppress marihuana recovered from a Premium Saltine cracker box because it was not reasonable for the police to believe that the cracker box contained a gun; and (7) petitioner's sentence of twenty years to life for the count of Criminal Possession of a Controlled Substance in the First Degree was excessive.

The Appellate Division determined that, because petitioner had not raised the specific issue concerning his *Miranda* rights at the hearing or in his motion papers that he raised on appeal, he had not preserved his *Miranda* claim for appellate review, and, in any event, petitioner had implicitly waived his *Miranda* rights. In addition, the Appellate Division found that petitioner's remaining claims either were without merit or did not warrant reversal. By memorandum decision and order dated December 8, 1997, the Appellate Division modified the judgment of conviction to the extent of reducing the sentence on the count of Criminal Possession of Marihuana in the Fifth Degree from one year to three months. In all other respects, the judgment of conviction and sentences were affirmed. *People v. Grace,* 245 A.D.2d 387, 665 N.Y.S.2d 584 (2d Dept.1997). Petitioner's application for leave to appeal to the New York Court of Appeals was denied. *People v. Grace,* 91 N.Y.2d 941, 671

N.Y.S.2d 721, 694 N.E.2d 890 (1998) (Kaye, C.J.).

On March 3, 1998, petitioner moved pursuant to Section 440.10 of the New York Criminal Procedure Law to vacate his judgment of conviction. Petitioner raised the following claims: (1) the prosecutor committed misconduct during summation; (2) the State failed to prove petitioner's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (3) the trial court's charge to the jury contained various errors; (4) the trial court improperly dismissed two prospective jurors for cause; and (5) trial counsel was ineffective for failing to preserve the errors enumerated by petitioner in his Section 440.10 motion.

By decision and order dated July 12, 1999, the Supreme Court, Kings County (Harkavy, J.), denied the motion. The court ruled that all of petitioner's claims could have been raised on direct appeal and, therefore, they were procedurally barred from review by that court. Petitioner's motion for leave to appeal the decision to the Appellate Division was denied on October 27, 1999.

On October 18, 1999, petitioner filed an application for a writ of error *coram nobis* in the Appellate Division claiming that his appellate attorney was ineffective because he failed to raise the following claims on direct appeal: (1) the State failed to prove petitioner's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (2) the prosecutor improperly vouched for the credibility of the people's witness during summation; (3) the trial court erred in refusing to permit defense counsel to call another witness, Mr. Palmer; and (4) the court's instruction to the jury contained various errors. By order dated February 14, 2000,

the Appellate Division denied petitioner's application. *People v. Grace,* 269 A.D.2d 466, 702 N.Y.S.2d 907 (2d Dept.2000). In his petition for a writ of habeas corpus, petitioner raises all of the claims he raised on direct appeal, in his motion to vacate the judgment, and in his application for a writ of error *coram nobis.*

## Background

On September 28, 1994, at approximately 7:30 a.m., the Emergency Service Unit ("ESU") of the New York City Police Department executed a warrant to search apartment 1–A at 716 East 105th Street in Brooklyn and petitioner, if he was present, for a .32 caliber semiautomatic pistol, which may have been used in the shooting of a police officer. The ESU broke down the door of the apartment with a battering ram and secured petitioner, his mother (Ms. Grant) and another female (Ms. Bartey[1]) in handcuffs in the kitchen. In one of the bedrooms, the police found a loaded .38 caliber semiautomatic handgun between a mattress and box spring; a box containing the word "Beretta" on it which had the outline of a Beretta nine millimeter weapon on the inside; a box containing twenty-two nine millimeter cartridges as well as a loose .38 caliber cartridge; a bag containing more than one and one-half ounces of marihuana; a beeper; a ski mask; a clear plastic envelope containing approximately one hundred small, clear plastic bags; more than one thousand clear plastic vials and caps; a bulletproof vest; a small electronic scale; and a photograph of petitioner. A search of the safe that was found in the same bedroom closet revealed two bags of cocaine weighing more than five and one-half ounces, a vial of crack cocaine, $1200.00 in cash and two

---

**1.** This person is alternatively referred to in the record as Ms. Bartey, Ms. Bartee and Ms. Martey. Since "Bartey" is the spelling used in the trial transcript, p. 762, that will be the name used in this opinion to designate the other woman present during the search.

cellular telephones. Petitioner was arrested and the two women were released.

## Suppression Hearing

Prior to trial, petitioner moved to suppress the physical evidence recovered from the apartment on the grounds that the detectives had no authority to seize items not listed in the search warrant and that several items seized did not fall under the "plain view" exception to the warrant requirement. Petitioner also moved to suppress his statements to police and the key to the safe that he gave the police on the grounds that he did not receive his *Miranda* warnings prior to giving his statements or turning over the key.

At a hearing on the motions, held on March 28, 29 and 30, 1994, Detective John Swift, a Detective Investigator for the New York City Police Department testified that, on September 28, 1994, at approximately 7:30 a.m., he executed a search warrant at 716 East 105th Street, in Kings County. The warrant authorized him to search for a .32 caliber semiautomatic weapon in Apartment 1A and on the person of John Grace, if he was present, at anytime without prior notice. Detective Swift testified that the Warrant Execution Squad of the ESU used a hydraulic ram to force entry to the apartment and placed petitioner, petitioner's mother and another woman in the hallway. Petitioner and the two women were handcuffed and then returned to the kitchen where they were placed in chairs facing the wall. Detective Swift testified that he read petitioner his warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), from a card that he carried with him, but did not ask petitioner the last question printed on the card, whether he was willing to speak to the police, because he was not going to question petitioner at that time. Detective Swift also testified that petitioner stated that he understood all of the *Miranda* warnings.

Detective Swift testified that he found a safe on the floor of one of the bedroom closets and asked petitioner to give him the combination or key to the safe or else he would have ESU come back and open it. Swift testified that petitioner told him that it wasn't necessary to call ESU back and he gave Swift a key to the safe. Detective Swift found two packages of cocaine, a vial of crack, two cellular telephones and $1,200.00 in United States Currency in the safe. In the same bedroom, detectives recovered a loaded .38 caliber semiautomatic handgun from between the mattress and boxspring of the bed; a bag of marihuana and a brown paper bag containing numerous clear plastic vials and caps from under the bed; numerous small plastic bags from inside the desk drawer; a bullet proof vest, a box containing twenty-two nine millimeter rounds of ammunition, and a box for a Baretta handgun from inside the closet; a black ski mask and a beeper from on top of the desk; an electronic scale from on top of a table and a photograph from the wall. Detective Swift testified that petitioner told him that all of the property found in the room was his, that nothing belonged to his mother, and that she had no right to enter that bedroom. Swift testified that after petitioner was arrested and taken to the 69th precinct for questioning, petitioner stated that he bought the cocaine on consignment in New York to sell in Pennsylvania.

On cross-examination, Detective Swift testified that the ESU team was dressed in helmets and bullet-proof vest or jackets and carrying firearms when they broke the lock on the door to the apartment and entered. Swift testified that he recovered all of the items in the apartment himself except for the .38 caliber handgun, which was recovered by other officers. Detective Swift testified that petitioner told him that the property in the apartment was his and

no one else's after petitioner was placed under arrest and that petitioner told him that he made that statement because he didn't want his mother to be arrested. Swift testified that when he arrested petitioner he was arresting him for criminal possession of a weapon.

Petitioner testified that the police broke into his apartment with battering rams, wearing helmets and carrying shields and rifles with lights on them. He testified that approximately twelve officers entered the apartment and handcuffed petitioner and the two women in the kitchen while they were still in their underwear. Petitioner testified that a female officer, later identified as Detective Pena, took him into the living room and asked him if he wanted to help his mother and petitioner believed that this meant that, in order for his mother to be released, he should say that everything in the apartment belonged to him. Petitioner testified that he did not see Detective Swift until approximately twenty minutes after the ESU entered the apartment. Petitioner testified that police officers told him that they found cocaine and that they showed him the gun that they found.

Petitioner testified that, at the 69th precinct, he told Detective Swift that he lived in Pennsylvania, but that he never said that he bought drugs in New York on consignment to sell there. Petitioner testified that he did not live in the Brooklyn apartment, but lived in Pennsylvania with his girlfriend, Amber Powell, and he gave the address. He testified that he visited his mother in the apartment approximately once a month and slept in the living room on the couch when he did. Petitioner testified that his mother rented out the bedroom in which all of the evidence was found, to a boarder, Ms. Bartey, and that none of the items found belonged to him. He testified that he did not currently have a key to the apartment, but that he did have one prior to January 1994, when he used to live there. He also testified that neither Detective Swift, nor any other officer, ever gave him his *Miranda* warnings. Petitioner testified that his mother asked to see the search warrant when the ESU broke into the apartment, but the police never showed it to her. He testified that the only question that Detective Swift ever asked him was his name, that he did not know where the keys to the safe were and did not tell Detective Swift where they were. He also testified that, when he gave the court officer the address of the Brooklyn apartment as his home address, rather than giving his Pennsylvania address, he did so only because he thought that they would not release him on his own recognizance if he did not have a local address.

Where the testimony was inconsistent, the trial judge credited the testimony of Detective Swift, and not that of petitioner. The trial judge found that petitioner was given his *Miranda* warnings and voluntarily chose to speak to the police. He also found that, under New York law, the police had a right to look in all locations that might possibly contain a .32 caliber handgun and seize any contraband found. The trial judge further found that looking in a safe, a brown paper bag and a Premium Saltine box was reasonable because those places could have contained a gun or a part of one. The trial judge found that the police had probable cause to arrest petitioner after they found the .38 caliber handgun and that the actions of the police were proper in all respects. The trial judge denied the motions to suppress the statements made by petitioner and any other evidence seized during the search.

### Jury Trial

A jury trial was held in April 1995 in New York State Supreme Court, Kings County. The State called Detective Swift, who testified substantially as he did at the

hearing; Eloise Delaisla, a chemist with the New York City Police Laboratory who identified the drugs found in the apartment; Detective Ramirez, a ballistics expert who testified that the .38 semiautomatic handgun and the ammunition recovered were operable; and Katherine Alexander, with the New York City Criminal Justice Agency, who interviewed petitioner after he was arrested for purposes of determining whether he could be released on his own recognizance. Alexander testified that petitioner told her that he lived with his mother at the apartment and had lived there for 10 years, but that when she called petitioner's mother to verify his address, his mother stated that petitioner lived in Pennsylvania. The State also called Detective Perrino, the commanding officer of the team that executed the search warrant, and Officers Farrell and Reilly who accompanied him. All of the detectives' testimony was consistent.

The defense called Geraldine Grant, petitioner's mother, who testified with counsel by her side so that she could be advised whether or not to answer the questions asked or invoke her protection against self-incrimination under the Fifth Amendment. Ms. Grant testified that petitioner lived in Pennsylvania, visited her about once a month and always slept on the couch when he did. She testified that Ms. Bartey stayed in the bedroom where all the evidence was found. She testified that Ms. Bartey was in Ms. Grant's room the morning that the search took place rather than in her own bedroom because they were talking. Ms. Grant also testified that, on the morning that the search took place, Ms. Bartey left with someone from the Health Department, as she regularly did, to get her medicine for tuberculosis, and that she has not seen her since. Ms. Grant was advised by her lawyer to invoke her Fifth Amendment protection when she was asked any questions about the safe or about any men who may have visited the apartment.

The defense also called Assistant District Attorney Rodney Pepe–Souvenir, of the Kings County District Attorney's Office, whose job it was to interview police officers and prepare files for arraignments. Pepe–Souvenir testified that he interviewed Detective Swift and wrote down what the detective told him on September 28, 1994, concerning petitioner's arrest. He testified that Detective Swift told him that the only inculpatory statement petitioner made was that the gun and everything else belonged to him. He also testified that he had no recollection of Detective Swift telling him that petitioner bought drugs in New York to sell in Pennsylvania and confirmed that the report that he filled out at the time of the interview did not indicate that petitioner said that to Detective Swift.

The defense also called Amber Powell, petitioner's girlfriend, who testified that she was 18 years old and that she lived in Scranton, Pennsylvania with her two children. She testified that petitioner lived with her for five months beginning in January 1994 and ending about the time that petitioner was arrested. Ms. Powell testified that petitioner kept clothes in her apartment and visited his mother in Brooklyn approximately once a month.

On rebuttal, the State called Detective Pena, who was on the team that executed the search warrant. She testified that she took the two females out of the kitchen alone to get dressed, but that she did not take petitioner out of the kitchen at any time or have any conversation with him about helping his mother.

Petitioner was found guilty on all charges on April 28, 1995.

## STANDARD OF REVIEW

Petitioner filed this petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which mandates deference to state court decisions by federal habeas corpus courts.

Under 28 U.S.C. § 2254:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim—

(1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that a state court decision is "contrary to" clearly established Supreme Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 405–06, 120 S.Ct. 1495. The court further stated that a state court decision is "an unreasonable application of" clearly established Supreme Court precedent if, from an objective standpoint, the state court applied Supreme Court precedent unreasonably, not simply incorrectly or erroneously. *Id.* at 411, 120 S.Ct. 1495. The Court of Appeals for the Second Circuit has held that, to show "an unreasonable application" petitioner must identify "some increment of incorrectness beyond error." *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir.2002) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000)).

## DISCUSSION

### 1. Waiver of *Miranda* Rights

Petitioner claims that his statement to the police, during the execution of the search warrant, that he had a key to a safe, which was located in a bedroom and which contained contraband, as well as the key itself, should have been suppressed, because they were obtained in violation of his *Miranda* rights, because, after reading petitioner his rights, Detective Swift did not ask whether, having understood those rights, petitioner was nonetheless willing to speak with the police.

■ Petitioner now acknowledges that Detective Swift read him his *Miranda* warnings but claims that his statements were involuntary because Swift did not explicitly ask him if he wished to waive those rights and speak to the police. Thus, petitioner argues that his statements to Detective Swift that he had the key to the safe were not voluntary when Swift told petitioner that he would have ESU open the safe if petitioner did not produce the key. On his direct appeal, the Appellate Division determined that this issue was unpreserved for appellate review because petitioner did not argue this particular *Miranda* issue before the court on the suppression motion. At the suppression hearing, petitioner argued that he had not received any of his *Miranda* warnings; an assertion that the trial judge found unworthy of belief. The Appellate Division expressly relied on the procedural bar when it rejected this claim. Thus, the claim is procedurally barred from habeas review unless petitioner can establish cause for his default and prejudice therefrom, or a fundamental miscarriage of justice result-

ing from the claimed error. *See Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Epps v. Commissioner*, 13 F.3d 615 (2d Cir.), *cert. denied*, 511 U.S. 1023, 114 S.Ct. 1409, 128 L.Ed.2d 81 (1994). Petitioner has not established cause or prejudice from the error, nor has he shown that there was a fundamental miscarriage of justice. Thus, the claim is procedurally barred from habeas review.

Moreover, after concluding that petitioner's *Miranda* claim was procedurally barred, the Appellate Division stated, "In any event, an implicit waiver was established on this record (see, *People v. Sirno*, 76 N.Y.2d 967, 563 N.Y.S.2d 730, 565 N.E.2d 479). The circumstances surrounding the defendant's admissions to the police do not indicate that his admissions were coerced." *People v. Grace*, 245 A.D.2d at 388, 665 N.Y.S.2d 584.

■ Petitioner has not established that the Appellate Division's application of *Miranda* was objectively unreasonable. The Appellate Division relied on *People v. Sirno*, to find that petitioner had implicitly waived his *Miranda* rights. *Sirno* relies on the reasoning set forth in *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), which held that, after initially being advised of his *Miranda* rights, an explicit waiver of those rights is not invariably necessary to show that a defendant waived the right to counsel guaranteed by *Miranda*. In *Butler*, the Supreme Court held that the question of waiver must be determined by the specific facts and circumstances of the case. *Id.* at 373–76, 99 S.Ct. 1755. *See also United States v. Gaines*, 295 F.3d 293, 297 (2d Cir.2002).

Petitioner does not now dispute that the *Miranda* warnings were given or that he understood them. Petitioner argues that he felt coerced because Detective Swift said he would have ESU come back in and

open the safe if petitioner did not give him the key and petitioner had already been frightened by the spectacle of the ESU breaking down the door in helmets and riot gear. However, petitioner has not established that the Appellate Division's decision was objectively unreasonable. The Appellate Division's application of *Miranda* and *Butler* were not unreasonable applications of clearly established federal law as determined by the Supreme Court, and petitioner's *Miranda* claim, in addition to being procedurally barred, is without merit.

## 2. Suppression of Marihuana and Items Seized in Plain View

Petitioner claims that the court improperly denied suppression of various items seized by the police, which were not mentioned in the search warrant, based on the plain view exception to the warrant requirement. He also claims that the court erred by refusing to suppress marihuana recovered from a Premium Saltine cracker box because it was not reasonable for the police to believe that the cracker box contained a gun. Petitioner therefore invokes his rights under the Fourth Amendment.

■ A Fourth Amendment claim arising from a state criminal conviction is barred from federal habeas corpus review unless the state denied petitioner a full and fair opportunity to litigate the claim. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). A federal court is not permitted to judge the merits of the state court's decision. *See Capellan v. Riley*, 975 F.2d 67, 71 (2d Cir.1992). The court need find only that the state's procedure for resolving Fourth Amendment claims is "facially adequate" and that no "unconscionable breakdown" of the process occurred in petitioner's case. *See id.* An unconscionable breakdown occurs when the state fails to conduct a reasonable in-

quiry into petitioner's claim. *See Papile v. Hernandez*, 697 F.Supp. 626, 633 (E.D.N.Y.1988).

Federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in the N.Y.Crim. Proc. Law § 710.10 et. seq. (McKinney 2000), as being facially adequate. *See Capellan*, 975 F.2d at 70, n. 1. Therefore "federal scrutiny of [Grace's] Fourth Amendment claim[ ] is not warranted unless he demonstrates that he was in fact precluded from utilizing [that procedure] by an unconscionable breakdown in the review process." *Shaw v. Scully*, 654 F.Supp. 859, 863–64 (S.D.N.Y.1987).

■ Here, petitioner fully litigated his Fourth Amendment claim at a hearing conducted on March 28, 29 and 30, 1995. The trial judge carefully examined the execution of the search warrant. In response to the prosecutor's objection to questions concerning the validity of the search warrant and the entrance to the apartment, the trial judge stated, "I have said in the past we are going into the whole question of the execution of the search warrant. That doesn't mean part of the search warrant. It means the whole search warrant, from beginning to end. If you object to any testimony I will uphold the objection and give an adverse inference." Hearing Transcript ("H.Tr.")19. The trial judge further stated, "we have a case here so serious . . . I have to be very careful and make sure I have all the testimony." H.Tr. 19. Thereafter, the trial judge conducted a hearing in which the prosecutor called Detective Swift, who was subject to direct, cross, redirect and recross examination and defense counsel called petitioner, whose testimony contradicted that of Detective Swift. Based upon this testimony, the trial judge allowed the admission of all the items seized in the apartment.

Thus, petitioner had a full and fair opportunity to present his Fourth Amendment claim to the state court, and there was no "unconscionable breakdown" in the procedures provided by the State to do so. For these reasons, petitioner's Fourth Amendment claim is not cognizable on habeas review.

### 3. *Sandoval* Ruling

Prior to trial, the state court conducted a hearing pursuant to *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), to determine whether to allow the prosecutor to impeach the defendant, if he decided to testify, by asking about the facts underlying two prior criminal acts which resulted in petitioner receiving youthful offender treatment. The trial judge ruled that the prosecutor could not ask about the ultimate disposition of the youthful offender adjudications, but decided he would allow the prosecutor to ask about the underlying facts of those cases. Petitioner claims that, since the underlying facts of those cases involved drugs and a robbery, essentially the same facts as the present case, this ruling effectively prevented him from testifying in violation of his right to Due Process under the Fourteenth Amendment. Petitioner did not testify at trial.

■ The Supreme Court precedent applicable to a claim of this nature was set forth in *Luce v. United States*, 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). *See Carroll v. Hoke*, 695 F.Supp. 1435, 1440 (E.D.N.Y.1988) *aff'd.* 880 F.2d 1318 (2d Cir.1989). Under *Luce*, petitioner's failure to testify makes it impossible to test the propriety of the ruling in order to weigh the probative value of a conviction as impeachment against its prejudicial effect. The reviewing court must know the precise nature of the defendant's testimony, which is unknowable when the defendant does not testify. Thus, petitioner's claim as to the impropriety of the *Sando-*

*val* ruling does not raise a constitutional issue cognizable on habeas review.

### 4. Prejudicial Effect of Other Evidence

█ Petitioner claims that the court erred in permitting various items, including a ski mask, a Baretta box, bullets, a cellular telephone and a beeper to be admitted into evidence, because the prejudicial effect of their admission outweighed their probative value. Claims concerning the admissibility of evidence at trial rise to constitutional magnitude only if the trial court's evidentiary error deprived a petitioner of a right to a fundamentally fair trial. *Chambers v. Mississippi*, 410 U.S. 284, 302–03, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998). To amount to a denial of due process, the evidence admitted in error must have been "sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." *Id.* (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir.1992)); *See also Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985).

In addition to the evidence described above that petitioner claims was admitted in error, the trial judge admitted a .38 caliber semiautomatic handgun, ammunition, cocaine, marihuana, drug paraphernalia and money. The items were found in the same bedroom of the apartment where the items objected to were found. The trial judge also admitted petitioner's statement that all of the items found were his. Petitioner fails to establish that any constitutional error occurred in the admission of evidence. Certainly, petitioner has failed to establish that the Appellate Division unreasonably applied federal law when it determined that petitioner's evidentiary claim had no merit or did not warrant reversal.

### 5. Exclusion of Defense Witness

Petitioner claims that he was denied his right to a fair trial and to present a defense when the trial court improperly prohibited defense counsel from calling a defense investigator, Jerry Crippen, as a witness. Crippen was going to testify that he spoke with petitioner's mother and that she told him that she had allowed individuals other than petitioner to set up drug operations in the apartment.

During the trial, the defense called petitioner's mother to the stand to testify. She testified that petitioner did not live with her in the apartment, that he lived in Pennsylvania and that she had rented out the extra bedroom in which all of the evidence was found to another woman, Ms. Bartey. She testified that petitioner always slept in the living room when he visited her and that he had only a couple of pairs of jeans, a few shirts and a pair of sneakers in the extra bedroom. The trial judge gave her permission to have her attorney stand next to her on the witness stand so that she could be advised as to whether to answer the questions asked or to invoke her Fifth Amendment protection against self-incrimination. However, the judge warned defense counsel to try not to elicit the invocation of the Fifth Amendment from the witness. Ms. Grant invoked that protection whenever any questions were asked concerning the safe in the bedroom. She was not asked about whether or not she allowed other people to keep drugs in her apartment.

Defense counsel then called Crippen to the stand at which point the prosecutor objected. The colloquy between the judge and counsel revealed that Crippen would testify that Ms. Grant told him that, when Ms. Bartey moved in she told Grant that she had some friends who were in the drug business who would pay Grant $400.00 per month to let them run a drug business out

of her house. Crippen would testify that Grant told Crippen that she went along with that idea. The prosecutor argued that defense counsel was trying to do through hearsay, actually double hearsay, what he could not do on direct examination, namely, that he was trying to show that the drugs belonged to the mother's friends, not petitioner. The trial judge would not let Crippen testify to the hearsay statements. Furthermore, he said that defense counsel had not laid any foundation for Crippen's testimony; he never asked Grant if she talked to Crippen and never asked her any questions about whom the drugs might have belonged to. The trial court denied defense counsel's request to recall Ms. Grant to lay a foundation for Crippen.

Insofar as petitioner claims that the exclusion of Crippen denied him his right to present a defense, the Supreme Court, in *U.S. v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998), held that a "defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *Id.* at 308, 118 S.Ct. 1261. *See Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). *Scheffer* held that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials" and that "[s]uch rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Rock*, 483 U.S. at 56, 107 S.Ct. 2704. The Court also found that the exclusion of evidence is unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused. *Id.* at 58, 107 S.Ct. 2704; *Chambers*, 410 U.S. at 302, 93 S.Ct. 1038; *Washington v. Texas*, 388 U.S. 14, 22–23, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

■ Here, Ms. Grant testified that the petitioner had moved out of the house and that she had rented the room to a boarder. According to Ms. Grant, the room that the drugs were found in was the room rented to Ms. Bartey. Thus, there was testimony before the jury from which they could decide that the evidence found in the bedroom did not belong to petitioner. The exclusion of the witness was not fundamentally unfair, and the judge's exclusion of that testimony on state hearsay grounds was not "arbitrary" and did not infringe upon a weighty interest of the accused. The hearsay testimony would have added little to the statements already given by Ms. Grant, and they bore no indicia of reliability since neither Ms. Bartey, nor anyone else, could corroborate them. Therefore, petitioner has not established that the Appellate Division's decision that petitioner's claim that the trial court's ruling impaired his ability to present a defense was without merit or did not merit reversal was an unreasonable application of clearly established federal law.

## 6. Excessive Sentence

Petitioner claims that his sentence of twenty years to life for the count of criminal possession of a controlled substance in the first degree was excessive. "No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (1992).

## 7. Claims in the Motion to Vacate the Judgment of Conviction

In petitioner's Motion to Vacate the Judgment of Conviction under C.P.L. § 440.10 he raised five claims: (1) the prosecutor committed misconduct during summation; (2) the prosecution failed to

prove the petitioner's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (3) the trial court's charge contained various errors; (4) the trial court improperly dismissed two prospective jurors for cause; and (5) trial counsel was ineffective for failing to preserve the errors enumerated by petitioner in his Section 440.10 motion. The Supreme Court, Kings County (Harkavy, J.), ruled that all of petitioner's claims could have been raised on direct appeal and, therefore, they were procedurally barred from review. Thus, since the state court expressly relied on the procedural bar, these claims are procedurally barred from federal habeas review unless petitioner can establish cause for his default and prejudice therefrom, or a fundamental miscarriage of justice resulting from the claimed error. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Epps v. Commissioner,* 13 F.3d 615 (2d Cir.), *cert. denied,* 511 U.S. 1023, 114 S.Ct. 1409, 128 L.Ed.2d 81 (1994).

Petitioner has not established cause for his default or prejudice therefrom. Nor has petitioner shown a fundamental miscarriage of justice. Therefore, the claims raised in the Section 440.10 motion are not cognizable on federal habeas corpus review.

### 8. Claims Raised in the *Coram Nobis* Application

Petitioner filed an application for a writ of error *coram nobis* with the Appellate Division claiming that his appellate attorney was ineffective because he failed to raise the following claims: (1) the prosecutor failed to prove petitioner's guilt beyond a reasonable doubt and the verdict was against the weight of the evidence; (2) the prosecutor improperly vouched for the credibility of the people's witness during summation, denigrated the defense theory, misrepresented the defense argument, and

exceeded the four corners of the evidence; (3) the trial court erred in refusing to permit defense counsel to call another witness, Mr. Palmer; and (4) the court's instructions to the jury on the voluntariness of petitioner's statements, circumstantial evidence, and statutory presumptions regarding the possession of controlled substances were erroneous. The Appellate Division denied the application. *People v. Grace,* 269 A.D.2d 466, 702 N.Y.S.2d 907 (2d Dept.2000).

A state court decision is "an adjudication on the merits" even when it does not explicitly refer to the federal claim or discuss the reasoning for its decision, so long as it finally resolves a party's claims and is based on the substance of the claim advanced, rather than on a procedural ground. *See Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir.2001). Here, the Appellate Division decision denying the petitioner's application for a writ of error *coram nobis* on the basis of ineffective assistance of appellate counsel stated that "appellant has failed to establish that he was denied the effective assistance of appellate counsel (*see Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987)." *People v. Grace,* 269 A.D.2d 466, 702 N.Y.S.2d 907 (2000). Thus, under *Sellan,* as the state court clearly relied on substantive, rather than procedural, grounds to decide petitioner's application, this holding is an adjudication on the merits and should not be overturned unless it was an "unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Under AEDPA, a state habeas petitioner claiming ineffective assistance of counsel must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone,* 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914, (2002). *Strickland* requires a petitioner claiming ineffective assistance to

meet a two-part test. First, his attorney's performance must have fallen below an objective standard of reasonableness under prevailing professional norms. The bar for proving deficiency is high: the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment ... Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 687, 689, 104 S.Ct. 2052. Second, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Counsel's performance can be prejudicial "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.* The constitutional right to effective assistance of counsel extends to appellate counsel. *See Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

Petitioner has not satisfied either prong of the *Strickland* test. First, petitioner has failed to demonstrate that his appellate counsel's performance was constitutionally deficient. Most of the evidence used against petitioner was gathered during the search of the apartment; therefore, it was reasonable for appellate counsel to concentrate the appeal on the suppression rulings and the evidentiary rulings. Appellate counsel's lengthy brief raised seven claims, made numerous citations to the record and made legal arguments based on both state and federal law.

Under *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), cited by the Appellate Division, defense counsel assigned to prosecute an appeal from a criminal conviction does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant.

Appellate counsel may focus on key issues and "winnow out weaker arguments," *Jones* at 751, 103 S.Ct. 3308, so long as counsel is careful not to overlook "significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994). As will be seen, the arguments that counsel did not raise were not significantly stronger than those he did raise. Petitioner has not shown that these claims had any reasonable likelihood of success.

■ First, petitioner claims that appellate counsel was ineffective for failing to raise a claim that the State failed to prove guilt beyond a reasonable doubt and that the verdict was against the weight of the evidence. Petitioner claims that the State failed to prove petitioner's culpability as to criminal possession of a controlled substance in the first degree because the State relied wholly on circumstantial evidence to support its theory that petitioner constructively possessed the evidence seized.

The evidence presented by the State showed that the drugs, the money and the gun were found in the bedroom of the apartment where petitioner lived with his mother until at least five months prior to the search. The evidence included petitioner's statement that everything belonged to him and the fact that he had access to the safe containing the drugs. Thus, the evidence was sufficient that a jury, which credited the officers' testimony, could have found petitioner guilty of the crimes charged. Thus, petitioner has not established that appellate counsel's decision not to raise this claim on direct appeal was deficient performance under *Strickland*.

Second, petitioner claims that appellate counsel was ineffective for failing to raise a claim that the prosecutor's summation sug-

gested inferences to the jury that were wholly unsupported by the evidence, denigrated petitioner's mother's testimony, misrepresented the evidence concerning the boarder, persistently vouched for the credibility of prosecution witnesses and denigrated the defense theory by calling it "illogical, unbelievable and absolutely incredible." Petitioner argues that "there is a strong reasonable probability that the errors contributed to the defendant's conviction. Thus, the effects cannot be deemed harmless beyond a reasonable doubt." Petitioner's Memorandum in Support of Petition for Habeas Corpus at 52.

In advancing the argument that a prosecutor's closing remarks require reversal, petitioner bears a substantial burden, for "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Young*, 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). An improper summation requires a new trial only where the statements cause "substantial prejudice" to the defendant. *United States v. Modica*, 663 F.2d 1173, 1184 (2d Cir.1981). The Second Circuit has adopted a three-part test for determining whether a prosecutor's misconduct resulted in a denial of due process. The court is to consider the severity of the misconduct, the nature of any curative measures taken by the judge, and the certainty of conviction absent the improper conduct. *United States v. Millar*, 79 F.3d 338, 343 (2d Cir.1996).

As to the severity of the conduct, the prosecutor's statements were largely in response to defense counsel's assertions that Detective Swift made up the story about what happened at the apartment and that the "entire scenario is a complete and utter fabrication." Tr. 904. *See also* Tr. 881, 885, 890, 907–910, 917–969. When "the defense has 'attacked ... the credibility of the government agents, the prosecu-

tor is entitled to reply with rebutting language suitable to the occasion.'" *U.S. v. Rivera*, 22 F.3d 430, 438 (2d Cir.1994) (citations omitted). Petitioner has not pointed to any comments made by the prosecutor that were not in response to defense counsel's comments on the State's witnesses or were not directed at testimony or evidence introduced at trial. As to curative measures taken by the judge, the trial judge sustained some objections by defense counsel, but did not give curative instructions. He did charge the jury that any statement made by counsel in their openings, summation or otherwise, was not evidence. Finally, as to the certainty of conviction absent improper conduct, the evidence presented was overwhelming, and the likelihood of conviction, even absent the prosecutor's comments, was strong. In sum, the prosecutor's summation concentrated on rebutting defense counsel's arguments and did not result in a denial of due process. Thus, petitioner has failed to establish that the Appellate Division's decision that appellate counsel's failure to raise the claim of improper summation by the prosecutor on direct appeal was not ineffective assistance of appellate counsel was an unreasonable application of Supreme Court precedent under *Jones* or *Strickland*.

Third, petitioner claims that appellate counsel was ineffective for failing to raise a claim that the trial judge erred in the charge to the jury. Having reviewed the charge to the jury, there is no error of such magnitude that appellate counsel was ineffective for failing to raise it. Petitioner's claims regarding the instructions on the *Miranda* warnings and the voluntariness of his confession are meritless. His claim regarding the instructions on circumstantial evidence, when the instructions are viewed in their entirety, are equally so.

Finally, petitioner claims that his appellate counsel was ineffective for failing to raise a claim that petitioner was denied his opportunity to present a defense when the trial court did not allow defense counsel to call as a witness, Mr. Palmer, who would have supported the defense theory that the drugs and weapon belonged to the boarder, Ms. Bartey. Petitioner argues that the agency that Mr. Palmer works for could have provided evidence that showed that Mr. Palmer picked Ms. Bartey up several times a week and could have provided evidence that the apartment was her address of record. Petitioner claims that this error was compounded when, in her summation, the prosecutor referred to the fact that there was no testimony at trial that there was a border in the house who could have possessed the drugs and gun and when she referred to Ms. Bartey as a "phantom boarder" who no one had heard from since the search warrant was executed.

On cross examination, Detective Perrino testified that someone, whose name he did not know, came to the apartment to pick up Ms. Bartey for a doctor's appointment while the police were executing the search warrant. Detective Perrino testified that the person said that he would come to the apartment at certain intervals to pick up Ms. Bartey for medical treatment. Detective Perrino testified that he had the person wait approximately 15 minutes, outside the apartment, before he was allowed to leave with Ms. Bartey. When the detective was asked by defense counsel whether the person was able to show Detective Perrino proper credentials, the prosecutor objected as to the relevance of the question. The court sustained the objection. Defense counsel then stated that he had no further questions. Petitioner contends that defense counsel abandoned this line of questioning because he had been severely admonished by the court.

Later in the trial, in a colloquy with the judge and the prosecutor, defense counsel told the judge that he "should be finished with the defendant's case Thursday, sometime Thursday more than or later." Tr. 813. The prosecutor asked if defense counsel planned on calling any additional witnesses for whom he had not given her the name, address and date of birth, who would be testifying on Thursday. Defense counsel said, "[w]ell one of the witnesses I am trying to get in touch with is Mr. Palmer. I have his address. But I don't know." Tr. 814. The court stated that "Mr. Palmer I think is a collateral issue. He was there. He wasn't let in. We don't need him as a witness." Tr. 814. Defense counsel did not object to the court's determination. Thus, since testimony that someone came to the apartment several times to pick up Ms. Bartey was already before the jury, and since defense counsel did not object to the judge's ruling, petitioner has failed to show that, had appellate counsel raised this issue on appeal, it was likely to be successful.

In sum, the petitioner has failed to show that the Appellate Division's decision that appellate counsel was not ineffective under *Strickland* or *Jones*, was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

**SO ORDERED.**